## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEONARD D. ROSS** ) | |
| **9379 Principal Lane** ) | |
| **Waldorf, MD 20603** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. _____** |
| ) | |
| **UNITED STATES CAPITOL POLICE** ) | |
| **119 D Street, N.E.** ) | |
| **Washington, DC 20510** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## COMPLAINT

### I.    NATURE OF THE CLAIM

1.    Plaintiff Leonard D. Ross ("Plaintiff" or "Mr. Ross") brings this complaint of employment discrimination on the basis of race (African American) and retaliation (opposing discrimination and participating in two employment discrimination lawsuits) against Defendant United States Capitol Police ("Defendant" or "Agency").

2.    The acts complained of violate the Congressional Accountability Act of 1995, 2 U.S.C. § 1311, *et. seq.*, which incorporates by reference and makes applicable to victims of race discrimination and related reprisal the rights and remedies of Title VII of the Civil Rights Act of 1964, as amended, §7, 42 U.S.C. § 2000e, *et. seq.*

3.    Plaintiff seeks (1) declaratory, (2) injunctive relief, and (3) make-whole relief based on the discriminatory and retaliatory conduct to which he has been subjected by Defendant; (4) compensatory damages, and (5) reasonable attorney's fees and other legal costs.

## II.    JURISDICTION AND VENUE

4.     The Court has jurisdiction over this action pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1408, and 28 U.S.C. § 1331.

5.     Jurisdiction is proper because Plaintiff has exhausted all available administrative remedies by completing counseling and mediation with the Agency's Office of Compliance as required.

6.     Venue lies in this Court pursuant to 28 U.S.C § 1391(b) because the actions Plaintiff complains of took place in the District of Columbia where Plaintiff was employed full time by the Defendant Agency.

## III.    PARTIES

7.     Mr. Ross is African American and was employed by the Agency as a United States Capitol Police Office for 26 years until he was compelled to retire in lieu of termination by the Agency on August 31, 2013.

8.     The Defendant is the United States Capitol Police. Defendant was Mr. Ross's employer all times relevant to this action.

## IV.    ADMINISTRATIVE PREREQUISITES

1.     Mr. Ross has complied with all of the administrative prerequisites necessary to bring this action.

2.     On November 1, 2013, Mr. Ross made a timely request for counseling with the Agency, which was completed on December 2, 2013.

3.     On December 16, 2013, Mr. Ross made a timely request to initiate mediation, with the Agency, which ended on May 20, 2014.

4.     This Complaint is filed within 90 days of the receipt of Plaintiff's end of mediation period notice dated May 21, 2014.

5.     Mr. Ross is therefore entitled to file this Complaint before this Court.  See 2 U.S.C. §§ 1402-1404.

## V.     FACTS CENTRAL TO PLAINTIFF'S CLAIMS

6.     Mr. Ross was employed by the Agency as a United States Capitol Police Office for over 26 years, from July 28, 1987 until his involuntary retirement on August 31, 2013 in lieu of termination.

7.     Mr. Ross's record as a U.S. Capitol Police Officer has been stellar, with no history of problems with job performance or conduct.

### *Plaintiff's Protected EEO Activities*

8.     Mr. Ross is an original member of a proposed class in *Sharon Blackmon-Malloy, et al. v. United States Capitol Police Board*, Civil Action No. 01-02221 (EGS), a class action lawsuit brought by over 250 African American U.S. Capitol Police Officers (male and female, present and former) on October 29, 2001, alleging a systemic pattern and practice of a racially hostile work environment including harassment and insult, and race discrimination, *inter alia*, in discipline, termination, and retaliation for protected EEO activity and opposition to discriminatory practices by the Agency, dating back to the early 1960s and continuing to the present day, creating a climate of fear and resulting in disparate treatment on the basis of race and reprisal.   Mr. Ross completed counseling and mediation as part of the proposed class.

9.     On December 17, 2002, Mr. Ross filed *Ross v. United States Capitol Police Board,* Civil Action No. 02-02481 (EGS), an individual complaint of retaliation and discrimination on the basis of race (African American) against Defendant for subjecting him to

unequal discipline in comparison to white officers on the force, for failing to promote him to Sergeant on the basis of subjective oral examinations, and for disregarding the provisions of Section 30.02 of the Collective Bargaining Agreement requiring his notification, and the timely completion within 60 days, of any investigation into his alleged misconduct. On July 26, 2005, Mr. Ross's individual claim was consolidated within the Blackmon-Malloy class claims.

10.     On July 10, 2013, Mr. Ross joined 71 other fellow U.S. Capitol Police Officers as a named member of the *Blackmon-Malloy* class in the Joint Fifth Amended Consolidated Class Action Complaint against the Defendant, which is pending in this Court.

***Issuance of Protective Order***

11.     On November 4, 2011, Mr. Ross filed a complaint with the Agency's Internal Affairs Division against his ex-wife, then U.S. Capitol Police Officer Felicia McDonald, whom he had divorced some nine years previously. Mr. Ross accused his ex-wife of having an improper relationship with a convicted male felon, in violation of the Rules of Conduct of a Police Officer.

12.     During their marriage, Mr. Ross and Ms. McDonald had two daughters, and Mr. Ross retained physical custody for both girls under mutual agreement with his ex-wife.

13.     On May 23, 2012, as a result of Mr. Ross's internal affairs complaint against his ex-wife and the ensuing investigation, the Agency suspended Ms. McDonald from duty.

14.     Due to her suspension from duty in June 2012, Ms. McDonald asked Mr. Ross to permit their two daughters to reside with her, which Mr. Ross refused fearing for their safety due to his ex-wife's continued relations with and marriage to the convicted felon.

15.     Shortly thereafter, on June 30, 2012, Mr. Ross's oldest daughter, who had recently turned 18 year old, called the police after he arrived at Ms. McDonald's house and

4

collected his eight-year old daughter who was visiting his ex-wife's home.  Ms. McDonald was not present in her home at the time.

16.     On July 13, 2012, Mr. Ross was served with a one-year Civil Protective Order from the Circuit Court of Maryland for Charles County, dated July 9, 2012, in response to a petition filed by Officer McDonald for an alleged act of assault on June 30, 2012.  The Civil Protective Order included a Stay Away Order, prohibiting Mr. Ross from having contact with his ex-wife or her residence and from possessing a firearm, remaining in effect until July 9, 2013.

17.     With the assistance of counsel, Mr. Ross appealed the Maryland Circuit Court's Protective Order and requested that it be vacated under the circumstances.  No criminal charges or civil citations were filed against Mr. Ross in connection with the Protective Order.

18.     On December 11, 2012, following the Agency's internal affairs investigation into Mr. Ross's prior complaint against his ex-wife and Mr. Ross's testimony against her at a Disciplinary Review Board Hearing on October 2012, then Officer McDonald was terminated from her employment with the Agency for untruthful statements and rules violations due to her prohibited relationship with the convicted felon.   Without Mr. Ross's reporting Ms. McDonald's conduct violations, they would not likely have been discovered or addressed by the Agency.

19.     On July 19, 2013 the same Maryland Circuit Court awarded Mr. Ross sole custody of his eight-year old daughter.

20.     On July 1, 2014, Mr. Ross's appeal of the Maryland Circuit Court's Protective Order was dismissed as moot because, by then, the Protective Order had expired the previous year.

### *Refusal To Assign Plaintiff to Light Duty Not Requiring Possession of a Firearm*

*21.*      On July 3, 2012, in response to his self-reporting of the incident on June 30, 2012, the Agency placed Mr. Ross on paid administrative leave.  While on paid administrative leave, Mr. Ross was required to remain at his home from 8:00am – 4:30pm, during all workdays on Monday-Friday.

22.      During the year that followed, and in retaliation for his protected EEO activity in the *Blackmon-Malloy* Class Complaint, Mr. Ross received no telephone calls or emails or any other contact from his supervisors or chain of command, or any response from Agency management to his numerous requests to the OPR investigator to be placed in a light duty status instead of sitting idle at home.

23.      Upon information and belief, similarly situated non-African American employees and others without prior EEO activity have been placed on light duty after being charged with similar civil offenses or serious criminal offenses, and/or returned to duty after administrative leave, and should be considered as comparators:

> a.   *K-9 Officer Robert Lebron.*   Officer Lebron was arrested for domestic violence and issued a protective order from October 13, 2013 to January 6, 2014. He was charged with two crimes, which were not dismissed until February 2014. Officer Lebron was allowed to return to work after six months of administrative leave as a police officer on April 15, 2014. Officer Lebron is a white male, who has never participated in EEO activity.

> b.   *Officer Victor Bryant*.  Officer Bryant was arrested and charged with assault, and was placed on administrative leave for over a year, from August 14, 2009 to

February 17, 2011. He was then allowed to return to work after a one-week suspension. Officer Bryant is a white male, who has never participated in EEO activity.

c. *Officer Thomas McMahon.* Officer McMahon was arrested and charged with entering a property with the intent to damage. Officer McMahon was on administrative leave for over a year from September 27, 2009 to December 7, 2010, but was given a 30 day suspension and allowed to return to work. Officer McMahon is a white male, who has never participated in EEO activity.

d. *Officer Daniel Nutter.* Officer Nutter was arrested and charged with reckless driving and Driving under the Influence, which was later lowered to reckless driving. Officer Nutter was placed on light duty for 4-6 months, and then was allowed to return to work. Officer Nutter is a white male, who has never participated in EEO activity.

e. *Officer Carlos Rivas.* Officer Rivas was arrested and charged with Driving under the Influence. Officer Rivas was placed on light duty for approximately six months to a year and then allowed to return to full duty. Officer Rivas is a Hispanic male, who has never participated in EEO activity.

f. *Officer John Erickson.* Officer Erikson was arrested and charged with Driving under the Influence. He was placed on light duty for approximately six months, and then was disciplined and allowed to return to work. Officer Erickson has since been suspended for falsifying his time and attendance records, and remains employed by the Agency. Officer Erickson is a white male, who has never participated in EEO activity.

7

g. *Sergeant Alicia Sullivan.* Officer Sullivan was arrested and charged with Driving under the Influence. She was placed on light duty for four to six months, and then was allowed to return to duty. Officer Sullivan is a white female, who has never participated in EEO activity.

h. *Officer J.J. Pickett.* Officer Pickett was charged with committing an anthrax hoax, for which was placed on administrative leave for over a year. He was allowed to return to duty. Officer Pickett is a white male, who has never participated in EEO activity.

i. *Officer Larita Carney.* Officer Carney was arrested and charged with Driving under the Influence. She was placed on light duty for four to six months, and then was allowed to return to duty.  Officer Carney has since been charged with assault and placed on a diversion program with community service in the District of Columbia.   Since being charged with assault, Officer Carney was placed back on light duty working on background investigations.  Her assignment on light duty has extended for nearly a year. Officer Carney has never participated in EEO activity.

j. *Officer Roby Kennedy.* Officer Kennedy was caught drinking alcohol on duty and making disparaging statements against Hispanics in a YouTube video, but remains on the force. Officer Kennedy is a white male, who has never participated in EEO activity.

k. *Sergeant Dennis Bell.*  Sergeant Bell was charged with child pornography, but was alleged to retain his Retired Badge and Retirement Credentials upon his retirement.  Retired Sergeant Bill is a white male.

8

24.     There is no reasonable non-discriminatory explanation why Mr. Ross was treated so differently from these comparators.

***Refusal To Conduct A Timely and Appropriate OPR Investigation***

25.      During 2012 and 2013, the Agency also failed to conduct a timely and appropriate investigation into Mr. Ross's alleged misconduct underlying the Protective Order as required by Section 30.02 of the Collective Bargaining Agreement, which required the Agency to conduct and complete its investigation in a timely fashion, i.e., within 60 days.

26.     Instead, the Agency waited over a month before it commenced a formal investigation into Mr. Ross's alleged misconduct at his ex-wife's home, on July 24, 2012.

27.     Not until May 7, 2013, did the Agency's Office of Professional Responsibility (OPR) interview Mr. Ross, his current wife and his then 18-year old daughter, who had returned back home to live with him, about the incident on June 30, 2012.

28.     Even as late as August 15, 2013 when the Agency denied Mr. Ross's appeal of the recommendation for termination of employment, and over a month after the Protective Order expired on July 9, 2013 and Mr. Ross thereby was eligible to possess a firearm, the OPR investigation was still pending.  Because of Mr. Ross's protected EEO activity in the *Blackmon-Malloy* Class Complaint, the Agency disregarded proper procedures for conducting investigations into alleged employee misconduct.

***Issuance of Notice of Intent to Terminate***

29.     On July 1, 2013, Mr. Ross received a letter from agency Human Resources Director Jacqueline Whitaker stating that she was recommending that he be terminated for his failure to meet the conditions of employment due to his inability to perform the duties of his

position because of his inability to carry a firearm.  The letter gave him until July 5, 2013 to file an appeal.

30.     Prior to this, the Agency had not indicated that there was any need for Mr. Ross to take any action to obtain relief from the Civil Protective Order in order to remain employed.

31.     At the time Mr. Ross received the notice of intent to terminate, the one year Protective Order was on the verge of expiring, which would remove the bar from carrying a firearm.

32.     Mr. Ross obtained a brief extension, to July 12, 2013 to submit his appeal.  By the time Mr. Ross's appeal was due, the Protective Order had expired and he could unequivocally state that he was once again able to carry a weapon and able to perform all duties of his position.

33.     On July 12, 2013, the Agency's Labor Committee (i.e., Union) on behalf of Mr. Ross behalf filed an appeal of the Agency's Termination Recommendation, arguing that the Protective Order should never have been issued; the Agency failed to follow proper disciplinary procedures in recommending his termination; the Protective Order prohibiting his possession of a firearm had expired effective July 9, 2013; and that he had been denied due process.

34.     On August 15, 2013, the Agency's Chief of Police denied Mr. Ross's appeal of the recommended termination and stated his decision would be forwarded for processing but that, "Officer Ross may of course opt to resign or retire prior to final approval by the Capitol Police Board."   The Chief of Police stated that it was irrelevant that Mr. Ross could now perform all of his duties, because he had been unable to do so previously.  The Chief stated that Mr. Ross was not entitled to greater due process rights required for discipline matters, because he was being terminated for performance rather than misconduct – despite the fact that the matter

was initiated as a discipline case by OPR and despite the fact that the only limitation on his ability to perform was the expired Civil Protective Order.

35.     Had the agency placed Mr. Ross on light duty after issuance of the protective Order, as it has done for similarly-situated non-African American officers and for officers who had not engaged in EEO activity, it would have had no basis for trying to terminate him based on inability to meet the requirements if his position.

36.     Upon information and belief, U.S.C.P. General Order 2030 does permit the Agency to inform employees who have been unable to perform their duties for medical reasons for at least one year that they should apply for disability retirement or workers compensation or that they may be terminated without benefits, but this policy assumes that the disabling medical condition is continuing.   This policy is obviously inapplicable to Mr. Ross's case because his inability to perform was not medical but legal, and was completely resolved effective July 9, 2013 before the termination appeal was due.

37.     As a result of being threatened with termination for inability to perform duties even though he was fully able to perform them, Mr. Ross was forced to make the Hobbesian choice of either tendering his retirement application or placing his retirement annuity and other benefits, after 29 years of creditable federal civil service, in jeopardy by continuing to fight his termination.   Under these circumstances, Mr. Ross elected to retire from Federal civil service.

***Circumvention of Rights to Retirement Badge and Credentials and Leave Payment***

38.     Prior to Mr. Ross making the decision to retire, the Agency's Office of Human Resources advised him that his retirement would be in "good standing."   Accordingly, during Mr. Ross's out-processing from the Agency on August 31, 2013, he received his Retired Badge

and Retirement Credentials, and his Notification of Personnel Action, SF-50, dated September 12, 2013, reflects a "Voluntary Retirement."

39.     By letter dated September 13, 2013, however, the Agency reneged on its earlier representations regarding retiring in good standing which had induced Mr. Ross to retire, and instructed Mr. Ross to return his Retired Badge and Retirement Credentials, on grounds that these items may only be issued to former employees who have retired in "good standing."

40.     The Agency further informed Mr. Ross that he would not receive his pay for 262.50 hours of accrued annual leave (approximately $12,647.83) until he returned his Retirement Badge and Credentials, which he has steadfastly refused to do.  Mr. Ross's retirement SF-50 indicates that he was entitled to such a payment, yet to date the Agency has failed to pay Mr. Ross for his accrued annual leave, more than a year after he retired.   This failure is a continuing violation of 5 U.S.C. §5551(a) and its implementing regulation, 5 C.F.R. §550.1203(a)(1), which states that federal employers, including those in the legislative branch, must make a lump-sum payment for the value of accrued annual leave when an employee retires from federal service.

## VI.    STATEMENT OF THE CLAIMS

### Count I:  Race Discrimination

1.     Plaintiff adopts and incorporates by reference the preceding paragraphs as if fully set forth herein.

2.     Defendant unlawfully discriminated against Plaintiff on the basis of his race.

9.     The Congressional Accountability Act, 2 U.S.C. 2 U.S.C. § 1311, *et. seq.*, which incorporates by reference and applies Title VII of the Civil Rights Act of 1964, as amended, §7, 42 U.S.C. § 2000e, *et. seq.*, makes it unlawful for an employer to discriminate in employment

against any individual with respect to his compensation, terms, conditions or privileges of employment because of race.

3.      Defendant unlawfully discriminated against Plaintiff on the basis of his race (African American), when it subjected Plaintiff to disparate treatment as compared to similarly situated non-African American employees.

4.      By deciding to terminate Plaintiff based on his inability to carry a firearm due to a Civil Protective Order and thereby force his involuntary retirement, Defendant discriminated against Plaintiff.

5.      By failing to conduct and complete a timely and appropriate investigation into Plaintiff's conduct underlying the Civil Protective Order which would have exonerated him, Defendant discriminated against Plaintiff.

6.      By failing to grant Plaintiff's request to be assigned to light duty in lieu of administrative leave, Defendant discriminated against Plaintiff.

7.      By failing to pay out Plaintiff's annual leave lump sum and claiming after the fact that he did not retire in good standing, Defendant discriminated against Plaintiff.

8.      As a result of Defendant's violations of the Congressional Accountability Act and Title VII, which it applies, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, loss of rank and/or compensation, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

### Count II:  Retaliation

9.      Plaintiff adopts and incorporates by reference the preceding paragraphs as if fully set forth herein.

10.      Defendant retaliated against Plaintiff on the basis of his protected EEO activity and opposition to race discrimination.

11.      The Congressional Accountability Act, 2 U.S.C. 2 U.S.C. § 1311, *et. seq.*, which incorporates by reference and applies Title VII of the Civil Rights Act of 1964, as amended, §7, 42 U.S.C. § 2000e, *et. seq.*, makes it unlawful for an employer to commit retaliation because of an employee engaging in protected activity to include opposing discrimination and filing equal employment opportunity complaints and lawsuits.

12.      By deciding to terminate Plaintiff based on his inability to carry a firearm due to a Civil Protective Order and thereby force his involuntary retirement, Defendant retaliated against Plaintiff because of his protected activity.

13.      By failing to conduct and complete a timely and appropriate investigation into Plaintiff's conduct underlying the Civil Protective Order, Defendant retaliated against Plaintiff because of his protected activity.

14.      By failing to grant Plaintiff's request to be assigned light duty in lieu of administrative leave, Defendant retaliated against Plaintiff because of his protected activity.

15.      By failing to pay out Plaintiff's annual leave lump sum and claiming after the fact that he did not retire in good standing, Defendant retaliated against Plaintiff because of his protected activity.

14

16.     As a result of Defendant's violations of the Congressional Accountability Act and Title VII, which it applies, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, loss of rank and/or compensation, damage to his career, damage to his professional and personal reputation, humiliation and emotional distress, loss of enjoyment of life, and pain and suffering.

### PRAYERS FOR RELIEF

WHEREFORE, Mr. Ross respectfully requests that the Court issue judgment granting him the following relief from Defendant:

a.  A declaratory judgment that Defendant has discriminated against Plaintiff as alleged herein, in violation of the Congressional Accountability Act and Title VII of the Civil Rights Act, which it applies;

b.  An injunctive order requiring Defendant to take specific corrective action, including rescission of Plaintiff's retirement from Federal civil service and reinstatement with back pay for the period during which he was involuntarily retired, and that it take appropriate steps to protect Plaintiff from further acts of discrimination and retaliation in the future;

c.  Monetary and/or compensatory damages to the maximum extent allowed by law;

d.  Reasonable attorney's fees and the costs and expenses of bringing this action;

e.  Such other relief that is just and proper, including any pre- and post-judgment interest due; and

f.  All other relief to which Mr. Ross is entitled to at law or in equity.

**JURY DEMAND**

Plaintiff Leonard D. Ross requests a trial before a jury.

Dated:  August 15, 2014                         Respectfully submitted,

                                                 /s/ Tamara L. Miller
                                                TAMARA L. MILLER (D.C. Bar No. 435156)

                                                /s/ Heather G. White
                                                HEATHER G. WHITE (D.C. Bar No. 497159)
                                                THE FEDERAL PRACTICE GROUP
                                                1150 Connecticut Ave., NW
                                                Suite 900
                                                Washington, DC 20036
                                                Tel: (202) 862-4360
                                                Fax: (888) 899-6053
                                                Tmiller@fedpractice.com
                                                HWhite@fedpractice.com
                                                *Counsel for Plaintiff Leonard D. Ross*